2020R01212/JF/CD

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIM. NO. 20- _____ |
| | : | |
| v. | : | 18 U.S.C. § 1349 |
| | : | 18 U.S.C. § 2 |
| DENNYS A. TAPIA | : | |
| | : | |
| | : | |

**INFORMATION**

The defendant having waived in open court prosecution by indictment,

the United States Attorney for the District of New Jersey charges:

**COUNT 1**
**(Conspiracy to Commit Bank Fraud)**

1.     At times relevant to this Information:

**Relevant Background**

a.     Defendant DENNYS TAPIA resided in or around Bergen

County, New Jersey.

b.     Blanca Media ("Medina"), a co-conspirator not charged

herein, resided in or around Monmouth County, New Jersey and was employed

by Mortgage Lender A.

c.     Individual A served as a straw borrower for certain loans

obtained as part of the conspiracy.

d.     Mortgage Lender A was a financial institution engaged in the

mortgage lending business as defined by Title 18, United States Code, Section

20 in Union County, New Jersey and elsewhere.

       e.      Mortgage Lender B was a financial institution engaged in the mortgage lending business as defined by Title 18, United States Code, Section 20 in Bergen County, New Jersey and elsewhere.

       f.      The Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac") were government-sponsored enterprises (collectively, "GSEs") chartered by Congress with a mission to provide liquidity, stability, and affordability to the United States housing and mortgage markets. As part of their mission, Fannie Mae and Freddie Mac purchased residential mortgages that met certain guidelines ("Conventional Mortgages") in the secondary market, enabling lenders to replenish their funds to finance additional loans.

       g.      Financial Institution A was a financial institution engaged in the business of purchasing Conventional Mortgages from Mortgage Lender A.

       h.      Mortgage loans were loans funded by mortgage lenders and other financial institutions to enable borrowers to finance the purchase of real property.

       i.      A cash-out refinance mortgage loan was a type of mortgage loan funded by mortgage lenders and other financial institutions in which a homeowner obtained a new mortgage for an amount greater than the homeowner owed on his/her old outstanding mortgage loan. At closing, the old mortgage was paid-off and after costs and fees were paid, the homeowner received the difference between the new mortgage loan and the old mortgage

loan.

   j.  Mortgage lenders considered multiple factors when deciding whether to issue mortgage loans to a given buyer. Those factors included, but were not limited to, the buyer's debt-to-income ratio, annual income, and assets. Those factors also included a buyer's ability to personally provide the cash necessary to complete the transaction, including the down payment, and a buyer's ability to make monthly mortgage payments.

   k.  Applicants for mortgage loans were required to list their assets and income on their mortgage loan applications, and mortgage lenders relied on those applications when deciding whether to issue mortgage loans.

## The Conspiracy

  2.  From in or about 2015 through in or about 2018, in the District of New Jersey and elsewhere, the defendant,

DENNYS A. TAPIA

did knowingly and intentionally conspire and agree with Medina and others to execute and attempt to execute a scheme and artifice to defraud financial institutions, including Mortgage Lender A and Mortgage Lender B, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, these financial institutions, by means of materially false and fraudulent pretenses, representations, and promises, contrary to Title 18, United States Code, Section 1344.

## Goal of the Conspiracy

  3.  It was the goal of the conspiracy for TAPIA, Medina, and others (the

"Conspirators") to enrich themselves by fraudulently obtaining mortgage loans from financial institutions, such as Mortgage Lender A and Mortgage Lender B, to finance the purchase of properties by unqualified buyers and refinance existing loans.

### Manner and Means of the Conspiracy

4.     It was part of the conspiracy that:

    a.     TAPIA directed individuals (the "Buyers") to Medina, a loan officer at Mortgage Lender A, to obtain financing to purchase residential properties.

    b.     Some of the Buyers, such as Individual A, were straw borrowers whom TAPIA used to acquire properties for himself. Other Buyers were family members or associates of TAPIA.

    c.     The Buyers whom TAPIA directed to Medina lacked the financial assets and/or monthly income to qualify for the loans for which they applied.

    d.     Medina assisted the Buyers in completing loan applications and identified deficiencies in the Buyers' loan applications, including insufficient assets, income, and other information.

    e.     Medina communicated these deficiencies to TAPIA, and TAPIA provided Medina with false and fraudulent documents to hide from Mortgage Lender A the Buyers' true income and assets, including:

        i.     For a property on Algonquin Drive in Cranford, (the "Algonquin Drive Property") New Jersey, a fraudulent gift check and gift letter;

4

    ii. For a property on Grand Avenue in Ridgefield Park, (the "Ridgefield Park Property") New Jersey fraudulent lease agreements and bank statements;

    iii. For a property on Van Buren Street in Passaic, (the "Van Burn Street Property") New Jersey, fraudulent bank statements; and

    iv. For a property on Euclid Avenue in Ridgefield Park (the "Euclid Avenue Property"), New Jersey, fraudulent pay stubs.

   f. Medina and others then caused completed mortgage loan applications to be submitted to Mortgage Lender A that contained multiple misrepresentations of material facts regarding, among other things, the Buyers' assets and income (the "Fraudulent Applications").

   g. The Conspirators caused Mortgage Lender A to issue fraudulent Conventional Mortgages and other mortgages to the Buyers, including for the Algonquin Drive Property, the Ridgefield Park Property, and the Van Buren Street Property.

   h. Mortgage Lender A sold Conventional Mortgages that were approved based on fraudulent documents and information to Financial Institution A. Some of the fraudulent Conventional Mortgages Financial Institution A acquired from Mortgage Lender A were subsequently sold to Freddie Mac. The Conspirators' conduct resulted in hundreds of thousands of dollars in losses to Mortgage Lender A.

   i. TAPIA caused Individual A, acting as a straw borrower for the Euclid Avenue Property, to submit to Mortgage Lender B an application for

a cash out refinance mortgage loan that contained multiple misrepresentations of material facts and false and fraudulent documents, including false and fraudulent pay stubs and a false and a fraudulent verification of employment.

   j. Based on the false and fraudulent information submitted by Individual A and TAPIA, Mortgage Lender B issued a false and fraudulent cash out refinance mortgage loan, which resulted in TAPIA earnings tens of thousands of dollars in profits.

  All in violation of Title 18, United States Code, Sections 1349 and 2.

## FORFEITURE ALLEGATION

1.    The allegations contained in Count 1 of this Information are hereby realleged and incorporated by reference for the purposes of noticing forfeiture pursuant to Title 18, United States Code, Section 982(a)(2).

2.    The United States hereby gives notice to the defendant,

DENNYS A. TAPIA,

that, upon conviction of the offense charged in Count 1 of this Information, the government will seek forfeiture, in accordance with Title 18, United States Code, Section 982(a)(2), of any and all property, real or personal, that constitutes or is derived from proceeds obtained directly or indirectly as a result of the violation of Title 18, United States Code, Section 1349 alleged in Count 1 of this Information.

## SUBSTITUTE ASSETS PROVISION

3.    If by any act or omission of the defendant, any of the property subject to forfeiture described herein:

A.    cannot be located upon the exercise of due diligence;

B.    has been transferred or sold to, or deposited with, a third party;

C.    has been placed beyond the jurisdiction of the court;

D.    has been substantially diminished in value; or

E.    has been commingled with other property which cannot be subdivided without difficulty,

the United States of America will be entitled to forfeiture of substitute property

7

up to the value of the property described above, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code Section 2461(c).


CRAIG CARPENITO
United States Attorney

**CASE NUMBER:**

**United States District Court
District of New Jersey**

**UNITED STATES OF AMERICA**

**v.**

**DENNYS A. TAPIA**

**INFORMATION**

18 U.S.C. § 1349
18 U.S.C. § 2

**CRAIG CARPENITO**
*UNITED STATES ATTORNEY*
*FOR THE DISTRICT OF NEW JERSEY*

JONATHAN FAYER
ASSISTANT U.S. ATTORNEY
CHARLIE DIVINE
SPECIAL ASSISTANT UNITED STATES ATTORNEY
NEWARK, NEW JERSEY
973.645.2700